UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| GABRIELA KULP, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:12-CV-00162 |
| § | |
| UTMB HEATHCARE SYSTEMS, INC.; § | |
| aka UTMB (UNIVERSITY OF TEXAS § | |
| MEDICAL BRANCH); dba UNIVERSITY § | |
| OF TEXAS MEDICAL BRANCH AT § | |
| GALVESTON, § | |
| § | |
| Defendant. § | |

# MEMORANDUM AND ORDER

After the University of Texas Medical Branch at Galveston (UTMB) terminated her, Plaintiff Gabriela Kulp brought this lawsuit alleging that she was subjected to a hostile work environment, sex discrimination, and retaliation. UTMB filed a summary judgment motion denying that its employees harassed Kulp and arguing (1) that it terminated her because she failed to meet job-related expectations and (2) that it paid her less than a male colleague because their pay levels were already established when they were performing separate jobs in separate departments. Finding that Kulp is unable to meet the standards set forth in the Title VII case law, the Court **GRANTS** UTMB's summary judgment motion.

I.     **BACKGROUND**[1]

Gabriela Kulp has university degrees in Chemical Engineering and Marketing.  Docket Entry No. 22-3 at 12–13.  In October 2009, Kulp began working for UTMB as Senior Research Associate III in the Department of Surgery.  In January 2011, she was transferred to the Ophthalmology and Visual Science (OVS) department.  UTMB considered this move a lateral transfer and Kulp's salary remained the same.  Docket Entry No. 19 at 11.

In the new position, Kulp worked under Dr. Bernard Godley as a Senior Research Associate.  The job description of Senior Research Associate included, among other things: (a) contributing to and writing scientific analysis using established appropriate reporting procedures; (b) planning, directing, and coordinating complex research experiments following general technical procedures; (c) overseeing the records of all tests performed and data collected; and (d) reviewing preliminary analysis of junior staff.  Docket Entry No. 19-2 at 1.  During the time Kulp worked in the OVS department, the department employed no other senior research associates.  Docket Entry No. 22-3 at 18–19.

In her position in the OVS department, Kulp also worked closely with Edward Kraft.  Kulp, Kraft, and Kraft's wife had been business partners since 2003

---

[1] Given the summary judgment posture, the following recitation of the facts resolves all credibility determinations in Kulp's favor.  For instance, Kraft disputes Kulp's allegation that he told Kulp that she was "just a little girl" in a "good ole boys club." Docket Entry No. 19-5 ¶ 9.  For purposes of this motion, the Court resolves that issue in her favor.

2 / 18

working together on medical technology patents. *See* Docket Entry No. 19 at 12. Kraft started working for UTMB in June 2007 as a Laboratory Technical Assistant and then worked as an Engineering Technician in the Anesthesiology Department. In January 2011 (the same month Kulp was transferred), Kraft was also transferred to the OVS Department, keeping the same job title of Engineering Technician II. In this position, Kraft's job responsibilities included testing, repairing, calibrating, and maintaining research equipment. Docket Entry No. 19-4 at 1. UTMB considered this move a lateral transfer and his salary remained the same. Docket Entry No. 19-7 at 3. Kraft earned roughly $7,000 more annually than Kulp did— her annual salary was set at $54,808, while his was set at $61,565. Docket Entry Nos. 19-1 at 2; 19-3.

During their time working together in 2011, Kraft and Kulp's relationship deteriorated. Kraft yelled and cursed at Kulp and interfered with Kulp's communications with Godley. Docket Entry No. 11 at 3. Kulp grew frustrated that her suggestions regarding lab procedures were not being followed. When she and Kraft were discussing lab procedures, he sometimes told her that, "it [is] a boys' club and you [are] a girl." Docket Entry No. 22-3 at 64–65. According to Kulp, Kraft made those comments more than five times and perhaps more than ten—beyond that, she is unsure. Docket Entry No. 22-3 at 65.

Throughout 2011, Kulp's relationship with Godley was also strained:

- On April 18, 2011, Godley met with Kulp about a miscommunication with a coworker;

- On June 23, 2011, Godley reprimanded both Kulp and Kraft for disagreeing with each other in an unprofessional manner, including using inappropriate language;

- In July and August of 2011, Kulp received two written warnings for separate incidents of failing to follow instructions;

- On September 1, 2011, Kulp was given instructions regarding procedures for collecting data, which she agreed to follow. Kulp failed to complete the requested data in Godley's preferred format, despite his attempts to follow up with Kulp on the assignment; and

- On October 10, 2011, after he had asked her for the data several times, Godley gave Kulp a final written warning and requested that all previously due data be turned in the next day. The warning letter noted that continued failure to adhere to instructions and proper procedures would "result in further disciplinary action, up to and including termination." According to Godley, Kulp did not turn in the requested data.

Docket Entry Nos. 19-10 at 1–2; 19-12 at 2.

On the day after receiving the final warning noting the possibility of termination, Kulp called the UTMB Fraud and Abuse Hotline. During the call, she reported that Kraft had been lying to Godley about her work and that Kraft had yelled and cursed at her. Docket Entry No. 19-16 at 1. She also said that she tried to speak with Godley but he was too busy to listen to her. *Id.*

On October 27, 2011, Godley sent Kulp a letter that terminated her employment at UTMB. It detailed her employment history, including the incidents

in the OVS Department that led to her termination. Docket Entry No. 19-12.

Kulp then filed suit in this Court. Her original complaint asserted claims of sex-based disparate treatment, retaliation, and race-based hostile work environment. The Court granted the Defendants' motion to dismiss the race-based harassment claim because Kulp had not raised a race claim in her EEOC filing, but allowed Kulp to amend her complaint to assert a hostile work environment claim based on sex. Kulp's primary allegations are that Kraft created a hostile work environment; she was paid less than Kraft even though her position required more education and experience; and Godley instituted unachievable standards and criteria to cause her experiments to fail.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. DISCUSSION

### A. Hostile Work Environment

Kulp alleges that Godley and Kraft "orchestrated unrealistic goals and job responsibilities in an effort to cause [her] to artificially fail at her job." Docket Entry No. 22 at 8. Kulp argues that this unrealistic goal setting, combined with (a) Kraft's comments that UTMB is a "boys' club and you're just a girl," and (b) Godley's disciplining of Kulp, demonstrate that she has made a prima facie showing of a hostile work environment.

To establish a Title VII hostile work environment claim, Kulp must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.[2]  *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th

---

[2] To establish a hostile work environment claim, Kulp must show that (a) her "supervisor" engaged in harassing conduct, thus attaching vicarious liability to UTMB, or (b) UTMB was negligent with respect to the offensive behavior. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (explaining that when the harasser is the plaintiff's supervisor, plaintiff need not prove the fifth element). After UTMB filed its motion for summary judgment, the Supreme Court clarified the definition of "supervisor," holding that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered to take tangible employment actions against the victim." *See Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013). Under this standard, Kraft was not Kulp's supervisor, and UTMB cannot be held vicariously liable for his behavior. Therefore, for liability to attach to UTMB, Kulp must have told UTMB about the harassment and UTMB must have been negligent in remedying the situation. *Id.* Because *Vance* was decided after UTMB filed its summary judgment motion, the Court held oral argument and allowed the parties to brief *Vance*'s effect on Kulp's claim.

Cir. 2004) (citations omitted).  Title VII "does not set forth 'a general civility code for the American workplace,'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted), and "was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).  The work environment must be both "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryian v. Wal-Mart Stores Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).  "Whether an environment is hostile or abusive depends on a totality of circumstances, [including] the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller*, 84 F.3d at 194 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

    Kulp's claim warrants dismissal because she has not introduced evidence that the harassment she faced at UTMB affected a term, condition, or privilege of her employment under the high threshold the Fifth Circuit has set for that element.

---

However, the Court now determines that it need not decide whether UTMB was negligent in addressing Kraft's behavior.  It finds that Kraft's statements—even if known to UTMB—do not rise to the level of hostility and abusiveness required under Title VII.

Her strongest argument is that Kraft's repeated comments that "this is boys' club and you're just a girl" were abusive—especially because Kraft made those comments while he and Kulp were working on scientific experiments, and his remarks were designed to explain why Kulp's contributions did not matter. Docket Entry No. 19-1 at 14. Yet despite the offensive nature of Kraft's remarks, Kraft's behavior does not rise to the level that would allow Kulp to maintain her action against UTMB.

Kraft's comments, though degrading, did not prevent Kulp from contributing to Godley's lab. In one instance, even immediately after he told her that she was "just a girl" in a boys' club, Kraft still sent her comments and notes to Godley, who accepted them in the manuscript. Docket No. 19-1 at 13. Kraft's comments never brought her to the point that she could not fulfill her job obligations. And because they were generally made only when Kraft and Kulp were discussing lab procedures, they cannot be considered pervasive. *See Shephard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874–75 (5th Cir. 1999) (recognizing that comments "engender[ed] offensive feelings" but holding they did not "sufficiently affect the conditions of employment."). "Conduct that sporadically wounds or offends but does not hinder a female employee's performance" is not actionable under Title VII. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1999) (citation omitted).

The cases in which the Fifth Circuit has found a fact issue on whether harassment affects a "term, condition or privilege" involved far more pervasive or severe conduct than what occurred in this case. *See, e.g.*, *Mire v. Tex. Supply Co., Inc.*, 286 F. App'x. 138, 141–43 (5th Cir. 2008) (overturning a grant of summary judgment on a hostile work environment claim when the plaintiff was subjected to "an almost constant barrage of sexual comments and touching by multiple male employees," including verbal intimidation and nonconsensual touching); *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 470–71 (5th Cir. 1989) (finding a fact issue in a hostile work environment case when the plaintiff was subjected to sexually suggestive comments from 80% of the workforce, received over thirty pornographic notes in her locker, and was threatened with physical harm and dangled over a stairwell). Even cases presenting substantially stronger evidence of harassment both in terms of frequency and severity than exists in this case— including cases with references to sexual acts, profane comments about females, and physical contact— have been found wanting. *See Shephard*, 168 F.3d at 872 (finding no fact issue when alleged harasser attempted to look down plaintiff's clothing on several occasions, made inappropriate sexual comments about her breasts, and twice suggested that she sit on his lap); *Hollins v. Premier Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 742–44 (S.D. Tex. 2011) (finding that conduct complained of did not create a hostile work environment when plaintiff was cursed

at several times and called a "bitch" on the day her employment ended); *Gibson v. Potter*, 2007 WL 1428630, at *6 (E.D. La. May 10, 2007) (finding no hostile work environment when male employee once grabbed plaintiff's buttocks, on occasion attempted to stick his tongue in her ear, and solicited dates from the plaintiff). These cases demonstrate how "extreme" the conduct at issue must be. *See Hollins*, 766 F. Supp. 2d at 743 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Under this case law, Kulp cannot demonstrate that Kraft's comments rise to the level prohibited by Title VII.

Kulp also has not shown how Godley's purportedly unrealistic job expectations related to her sex. Godley and UTMB have a "right to set performance standards for its employees and expect conformance therewith." *Arensdorf v. Snow*, 2006 WL 3302532 at *11 (S.D. Tex. Nov. 13, 2006) (citing *Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)). Godley communicated with Kulp several times about her performance and asked her to provide him data recorded in a specific way. Evaluating an employee's performance deficiencies and placing her on a performance improvement plan are personnel decisions related to job performance. *See id.* Without more, Kulp has failed to show that these job expectations created a hostile work environment based on sex. *See id.* (finding that the actions taken by the plaintiff's supervisor were all performance related). Thus, Kulp's hostile work

environment claim fails as a matter of law.

### B. Disparate Treatment Claims

Kulp alleges that UTMB discriminated against her by (1) paying her less than it paid Kraft and (2) terminating her because of her sex. To establish a prima facie case of pay discrimination under Title VII, Kulp must show: "that (1) she is a member of a protected class, and (2) that she is paid less than a nonmember for work that required substantially the same responsibility." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984). To establish a wrongful termination claim, Kulp "must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (citation, alteration, and internal quotation marks omitted).

"Because direct evidence [of discrimination] is rare," the *McDonnell Douglas* burden-shifting framework, under which courts analyze circumstantial evidence of discrimination, typically determines whether disparate treatment claims survive summary judgment. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). Under *McDonnell Douglas*, the plaintiff "must first establish a prima facie case of discrimination." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory action. *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a defendant advances such a justification, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is not the true reason for the action, but rather is a pretext for discrimination. *Reeves*, 530 U.S. at 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Even if Kulp could present a prima facie case of pay discrimination,[3] her claim would still fail because she cannot overcome UTMB's legitimate, nondiscriminatory reason for the pay differential: Kulp and Kraft were both lateral transfers from different departments, and when they transferred, they retained the same pay that they had received in their old departments. Their pay levels in the OVS Department thus were the result of decisions made by their previous departments, before either of them was transferred to the OVS Department. Kulp

---

[3] The Court has doubts about whether Kulp has presented a prima facie case of pay discrimination under the Fifth Circuit's standard for "similarly situated" employees, which requires that she and Kraft had positions requiring "substantially the same responsibility." *Taylow v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). Kulp's position as a scientific researcher entailed contributing to research experiments and overseeing the records of those experiments. Docket Entry No. 19-2 at 1. Kraft's job as a technician, on the other hand, was mainly to test, repair, and maintain the laboratory's research equipment. Docket Entry No. 19-4 at 1. Kulp has not presented the Court with any cases in which such differing employment positions were deemed to be similar under Title VII. However, because of UTMB's legitimate nondiscriminatory reason for the pay differential, the Court need not reach this issue.

does not allege that her initial level of pay was discriminatory and conceded at oral argument that UTMB has not engaged in any systemic pay discrimination against women. Nor does she claim that her transition to the OVS Department was improperly considered a lateral transfer.

The burden for introducing a legitimate, nondiscriminatory reason for an adverse employment action is "exceedingly light"; as such, it has clearly been met in this instance. *See, e.g., E.E.O.C. v. Guardsmark, LLC*, 2011 WL 1668400, at *8 (S.D. Tex. May 3, 2011) (finding a legitimate nondiscriminatory reason in a Title VII pay discrimination claim when comparator male employee was hired at a different location and paid differently based on valid business rationales); *Butler v. Albany Intern.*, 273 F. Supp. 2d 1278, 1286–87 (M.D. Ala. 2003) (dismissing a pay disparity claim in which comparator male employee transferred into plaintiff's department and retained his previous salary level because "[i]t is clearly a legitimate business decision to transfer an employee from one department to the next while allowing the employee to retain his or her current pay grade level."). Kulp has introduced no evidence to show that the pay differential between herself and Kraft, which stemmed from pay decisions made before the two of them worked in the same department, was merely a pretext for discrimination. Given the undisputed fact that the pay differential arose from Kulp and Kraft being hired by different departments for different jobs, rather than from a common

decisionmaker electing to pay a woman less than a man in the same job, there is no evidence from which a jury could conclude that UTMB intended to pay Kulp less because of her sex.  *Cf. Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146 (2000) (noting that the *McDonnell Douglas* framework is aimed at determining if there is any evidence to support the "ultimate question [of] whether the employer intentionally discriminated").  The Court therefore will grant UTMB summary judgment on her disparate pay claim.

Kulp's wrongful termination claim confronts the same hurdle in the *McDonnell Douglas* framework that doomed her disparate pay claim: she cannot overcome the legitimate, nondiscriminatory reason that UTMB has offered to explain her termination.  The behavior that she was allegedly terminated for was failing to follow Godley's instructions, failing to turn in the data that he requested, and engaging in disruptive behavior in the workplace.  Docket Entry No. 19 at 30.  These legitimate, nondiscriminatory reasons for UTMB's decision to terminate her employment shift the burden to Kulp to demonstrate that UTMB's reasons are merely pretext for discrimination.  She has failed to demonstrate that UTMB made up the reasons its cited for the firing; that others who engaged in similar misconduct were treated more favorably, *see Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (explaining that a plaintiff must show that her employer gave preferential treatment to another employee who

engaged in nearly identical misconduct); that UTMB gave inconsistent reasons for her termination, *see Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 841–42 (E.D. Tex. 2009) (denying summary judgment when employer's explanations for the plaintiff's termination were inconsistent); or otherwise create a fact issue that would allow a jury to disbelieve UTMB's nondiscriminatory explanation for her termination. The Court therefore will grant summary judgment in favor of UTMB on the wrongful termination claim.

### C. Retaliation

Finally, Kulp claims that UTMB retaliated against her for complaining about Kraft to the UTMB fraud and abuse hotline. To establish a prima facie retaliation claim, Kulp must prove that: (1) she engaged in an activity that Title VII protects; (2) UTMB carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and UTMB's adverse action. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005). An employee has engaged in activity protected by Title VII if she has either "opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a) (West 2013).

If Kulp establishes a prima facie case, the burden shifts to UTMB to state a legitimate, nonretaliatory reason for its decision to terminate her employment.

"After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, --- F.3d ----, 2013 WL 5178846, at *3 (5th Cir. 2013) (citation and internal quotation marks omitted). The employee accomplishes this "by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)). To avoid summary judgment, Kulp "must show a conflict in substantial evidence on the question of whether [UTMB] would not have taken the action 'but for' the protected activity." *Id.* (citation and internal quotation marks omitted).

The first two elements of the required prima facie showing are not in dispute. Kulp engaged in a protected activity—calling the UTMB fraud and abuse hotline—and her termination was an adverse employment action. But Kulp has not established a prima facie retaliation claim because she has produced no evidence that Kulp, her supervisor and the individual at UTMB who ultimately terminated her employment, was aware of her phone call to a general hotline at an institution with over 10,000 employees. "Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of [her] protected activity." *Manning v. Chevron Chem. Co., LLC*, 322 F.3d 874, 883 n.6 (5th Cir. 2003). As Chair of the OVS

16 / 18

Department, it was Godley's decision to fire Kulp. Docket Entry No. 19-7 at 1, 6. Therefore, it follows that if Godley did not even know about Kulp's phone call, UTMB could not have retaliated against her for placing it. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168–69 (5th Cir. 1999) (dismissing a retaliation claim when plaintiff failed to establish that any of his supervisors knew that he had provided a written affidavit as part of a former employee's lawsuit); *Manning,* 322 F.3d at 884 (dismissing a retaliation claim because the plaintiff failed to show that decisionmakers at plaintiff's branch of a major corporation knew about previous lawsuits he had filed against the corporation); *see also Powell v. Booker T. Washington Guest Care, LLC*, 2013 WL 4680519, at *5 (W.D. La. Aug. 30, 2013) (dismissing a retaliation claim when the individual who issued all of the plaintiff's disciplinary warnings and signed the notice ending her employment was unaware of the plaintiff's protected activity). For this reason, Kulp's retaliation claim fails as a matter of law.[4]

---

[4] Moreover, even if Kulp had demonstrated that Godley knew about the phone call, thus establishing a prima facie case of retaliation, she has not demonstrated that UTMB's reasons for her termination are pretextual. Docket Entry No. 19-11 at 2. Godley's letter on October 10, the day before she called the hotline, indicated that her failure to follow his instructions would result "in further disciplinary action, up to and including termination." Docket Entry No. 19-10. And in Godley's final letter to Kulp, in which he explained his decision to terminate her employment, he detailed the verbal warnings he gave her, the instructions she failed to follow, and the important research deadlines that she did not meet. Docket Entry No. 19-12. Kulp, with the burden of demonstrating pretext in light of these legitimate, nondiscriminatory reasons for her termination, has not demonstrated that but for her hotline phone call, she would not have been terminated.

## IV. CONCLUSION

For the reasons explained above, Kulp has failed to introduce evidence from which a reasonable jury could infer that she endured a hostile work environment, was terminated or paid less because of her sex, or was subject to retaliation. Accordingly, UTMB's Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**.

SIGNED this 23rd day of October, 2013.

_____
Gregg Costa
United States District Judge